UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARRYANNE MOSS,<br><br>          Plaintiff,<br><br>     v.<br><br>INFINITY INSURANCE COMPANY, et al.,<br><br>          Defendants. | Case No. 15-cv-03456-JSC<br><br>**ORDER REVIEWING FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 9 |

This matter involves insurance claims arising from an automobile collision. Plaintiff Arryanne Moss ("Plaintiff"), proceeding *in forma pauperis*, filed the instant complaint against Defendants Infinity Insurance Company ("Infinity"), AWS Insurance Company ("AWS"), Lithia Chrysler, Jeep, Dodge of Santa Rosa ("Lithia"), and a number of Doe Defendants (collectively, "Defendants"). The Court previously granted Plaintiff's application to proceed *in forma pauperis*. (Dkt. No. 6.) Upon the review required by 28 U.S.C. § 1915(e)(2), the Court dismissed Plaintiff's initial complaint with leave to amend, finding that the complaint failed to establish a basis for subject matter jurisdiction. *Moss v. Infinity Ins. Co.*, No. 15-cv-03456, 2015 WL 5360294, at *1 (N.D. Cal. Sept. 11, 2015). Because, upon review, Plaintiff's FAC fails to cure some of the deficiencies that the Court identified in the initial complaint, the Court DISMISSES Plaintiff's FAC with leave to amend.

**COMPLAINT ALLEGATIONS**

The factual background of this case was already addressed in the Court's order dismissing the initial complaint. *Moss*, 2015 WL 5360294, at *1. Because the FAC has added some new factual allegations, the background is provided here.

In July 2012, Plaintiff—whose son, Liam, was then 15 years old—visited her friend

1  Charlotte Toth ("Toth") at Lithia, the car dealership where Toth worked. There, Plaintiff entered a
2  written contract with Lithia to purchase a 2012 Jeep liberty. Toth, who knew Plaintiff had a minor
3  son, executed the contract on Lithia's behalf. The contract itself is attached as an exhibit to the
4  FAC. (Dkt. No. 9-1.) The sales contract provides for the sale of a 2012 Jeep Liberty in the total
5  amount of $45,984.24. (*Id.* at 1.) The sales contract includes an integration clause noting that
6  "[t]his contract contains the entire agreement between you and us relating to this contract" and
7  stating that "[a]ny change to the contract must be in writing and both you and we must sign it. No
8  oral changes are binding." (Dkt. No. 9-1 at 2.) The sales contract also includes an arbitration
9  provision, with provides that either party may elect to resolve any dispute arising out of the
10 contract by neutral, binding arbitration. (*Id.*)

11  At Toth's recommendation, Plaintiff also purchased "gap" insurance payable to AWS at
12 $649 per month. The gap insurance purchase is reflected in the sales contract. (*Id.* at 2.) In
13 addition, although Toth knew that Plaintiff already had an auto insurance policy, Toth persuaded
14 Plaintiff to purchase an automobile liability policy from Infinity, which became effective July 9,
15 2012. As Plaintiff did not have her credit card at the time, Toth volunteered to pay the cost of the
16 Infinity insurance policy on her own personal card until it was in place. Toth did so. Lithia and
17 Toth orally promised Plaintiff that the gap insurer would promptly pay for any loss of the vehicle,
18 and that Infinity would pay for any loss incurred as a result of an accident involving the vehicle.
19 Toth further orally promised Plaintiff that she and Lithia would assist Plaintiff in securing any
20 insurance benefits due to her under the policies and would cover Plaintiff's losses "in the event
21 that there arose any difficulty in receiving the benefits of the policies[.]" (Dkt. No. 9 ¶ 41.)
22 Plaintiff paid all payments under the policies.

23  In September 2012,[1] Plaintiff's son Liam, without Plaintiff's permission and with no prior
24 warning, took the keys to Plaintiff's car and caused two separate accidents with two separate
25 vehicles. The two vehicles were damaged, and Plaintiff's car was rendered a total loss. Plaintiff

---

[1] In the initial complaint, Plaintiff alleged that the accident occurred on September 6, 2012. (Dkt. No. 1 ¶ 17.) In the FAC, Plaintiff alleges that the accident occurred on September 12, 2012, and elsewhere states that it occurred on September 7, or September 6-7, 2012. (Dkt. No. 9 ¶¶ 21, 25, 27.)

United States District Court
Northern District of California

made a timely demand of payment to Infinity and AWS. Infinity refused to pay, denying coverage because Plaintiff's son was not listed as an insured driver on the policy. Specifically, Infinity relied on the following provision of Plaintiff's insurance contract:

> **EXCLUSION—PART D ONLY**
> **We** do not cover **loss**:
> (30) Caused to **the insured auto** when it is driven or used by any person who resides in **your** household or is a **regular operator of the insured** auto and such person is not listed or endorsed on the policy prior to **loss**.

(Dkt. No. 9 ¶ 28 (emphasis in original).) Plaintiff then asked Toth to make a claim for benefits to AWS under the gap insurance policy. AWS denied her claim, as well.

In the FAC, Plaintiff alleges that she resides in Sonoma County, California, but is a resident of Washington state. (Dkt. No. 9 ¶¶ 1, 7.) Plaintiff contends that Infinity and AWS are businesses "of unknown legal origin and form" that "[have] not designated any particular California county as its principal place of business at the time it registered as a foreign corporation with the California Secretary of State." (*Id*. ¶¶ 2-3.) Elsewhere, Infinity is alleged to be a citizen of Alabama and AWS a citizen of Illinois. (*Id.* ¶¶ 8-9.) Likewise, Lithia is alleged to be a "business of unknown legal origin and form, and an automobile dealer and retailer qualified to do business in the State of California, within the County of Sonoma; elsewhere, Plaintiff alleges that Lithia is a citizen of California. (*Id.* ¶¶ 4, 10.) Toth is alleged to be both a resident of Oregon and California and a citizen and resident of Oregon. (*Id. ¶*¶ 5, 11.)

The FAC includes twelve causes of action. The first two causes of action allege that Infinity and AWS's refusal to pay out on the insurance claims constitute breach of contract. In the next two causes of action, Plaintiff alleges that Lithia and Toth are in breach of contract for failing to help Plaintiff secure insurance benefits and breaching their oral promise to cover Plaintiff's losses in the amount benefits were denied. The fifth, sixth, and seventh causes of action allege that Infinity, AWS, Lithia, and Toth breached the implied covenant of good faith and fair dealing by failing and refusing to conduct an adequate investigation before denying and withholding benefits, failing to reasonably interpret provisions of her insurance policy, failing to provide a reasonable basis for denying the claims, withholding valid payments, and misrepresenting facts

and policies. The next three causes of action are for negligence for negligently failing to explain the coverage provisions, the claims procedures, and the payment processing procedures of the insurance policies. The final two causes of action arise under California's Business & Professions Code, specifically, the Unfair Business Practices Act. The eleventh cause of action is for false and misleading business practices under Section 17200, and the twelfth is for false and misleading advertising practices under Section 17500. Plaintiff seeks damages, including compensatory, special, and punitive damages either to be proven at the time of trial in a sum which exceeds the minimum jurisdiction of this court.

## LEGAL STANDARD

The Court must dismiss an *in forma pauperis* ("IFP") complaint before service of process if it is frivolous, fails to state a claim, or contains a complete defense to the action on its face. 28 U.S.C. § 1915(e)(2). The Court retains discretion over the terms of dismissal, including whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

A complaint is frivolous for Section 1915 purposes where there is no subject matter jurisdiction. *See Castillo v. Marshall*, 207 F.3d 15, 15 (9th Cir. 1997) (citation omitted); *see also Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987) (recognizing the general proposition that a complaint should be dismissed as frivolous on Section 1915 review where subject matter jurisdiction is lacking). And in any event, the Court has an independent obligation to address whether it has subject matter jurisdiction over the case. *See Valdez v Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that district courts are "obligated to consider *sua sponte* whether [they] have subject matter jurisdiction").

Regarding dismissals for failure to state a claim, Section 1915(e)(2) parallels the language of Federal Rules of Civil Procedure 12(b)(6). *Lopez*, 203 F.3d at 1126-27. The complaint therefore must allege facts that plausibly establish the defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). A complaint must also comply with Rule 8, which requires the complaint to contain "a short and plain statement of the grounds for the court's jurisdiction[.]" Fed. R. Civ. P. 8(a)(1).

## DISCUSSION

4

The Court dismissed the initial complaint for lack of federal subject matter jurisdiction. Specifically, the Court noted that the complaint contained no short and plain statement of the Court's jurisdiction as Rule 8 requires, and also generally failed to support a basis for diversity jurisdiction because neither the amount in controversy nor the citizenship of the parties was adequately alleged. The FAC now contains a short and plain statement of the basis for the Court's jurisdiction: diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. No. 9 ¶ 12.) However, as set forth below, while the FAC now adequately alleges the amount in controversy at least for the purposes of Section 1915 review, it still fails to adequately allege diversity of citizenship.

**I.    Amount in Controversy**

"Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). If the complaint is silent on the amount of damages claims, "the court may consider facts in the [pleadings] and may require the parties to submit summary-judgment-type evidence relevant to the amount in controversy" at the outset to assess jurisdiction. *See Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (assessing diversity jurisdiction on removal) (internal quotation marks and citation omitted). Plaintiff's conclusory statement that the amount in controversy exceeds the minimum required for jurisdiction in federal court is insufficient. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see, e.g.*, *Baker v. Res-Care Inc.*, No. C 05-01338 SBA, 2005 WL 1500847, at *3 (N.D. Cal. June 24, 2005).

Here, Plaintiff's prayer for relief seeks the benefits under the insurance policy plus prejudgment interest; damages for "negligence, medical bills, lost wages, loss of use, emotional distress, [and] negligent infliction of emotional distress"; punitive damages; fines under the Business and Professions Code; and attorneys' fees. (Dkt. No. 9 at 23-24.) To the extent that Plaintiff seeks insurance benefits equal to the value of the vehicle, as it was rendered a total loss, while the FAC itself does not allege a dollar value, the attached sales contracts indicates that the total sale price of the vehicle was $45,984.24. (Dkt. No. 9-1 at 1.) This amount is far short of the amount in controversy. Plaintiff seeks further damages for medical bills and emotional distress

but includes no allegations that she suffered any particular emotional injury or sought treatment for her alleged distress; thus, this cannot serve as a basis of the amount in controversy. *See, e.g.*, *Surber v. Reliance Nat'l Indem. Co.*, 110 F. Supp. 2d 1227, 1231 (N.D. Cal. 2000).

Part of Plaintiff's claim for relief is based on recovery of civil penalties for violations of the Unfair Business Practices Act violations. Violations of Sections 17200 and 17500 permit a plaintiff to recover a maximum of $2,500 per violation, or $5,000 here based on the FAC allegations. *See* Cal. Buss. & Prof. Code § 17206(a); *id.* § 17500. Thus, these causes of action bring Plaintiff's total plausible amount in controversy to $50,984.24.

Plaintiff also seeks to meet the amount in controversy through attorneys' fees. "California law permits the recovery of attorneys' fees incurred by the insured in obtaining the benefits due under the policy when the insurer's conduct in withholding benefits was tortious." *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998) (citing *Brand v. Super. Ct.*, 37 Cal.3d 813, 816-19 (1985)). Because the amount in controversy may include attorneys' fees if recoverable by statute or contract, under *Brandt* the Court may consider attorneys' fees here in deciding whether the alleged amount in controversy is sufficient. *See Conrad Assocs.*, 994 F. Supp. at 1199 (citations omitted); *see, e.g.*, *James Dickey, Inc. v. Alterra Am. Ins. Co.*, No. 2:15-cv-00963-ODW-DTB, 2015 WL 4537732, at *3 (C.D. Cal. July 27, 2015) (considering attorneys' fees to determine the amount in controversy in an insurance dispute). Because the Court is reviewing the FAC on Section 1915 review and this is not a noticed motion to dismiss for lack of jurisdiction, Plaintiff has not had the opportunity to brief the matter or provide supporting documentation asserting and amount of fees and the reasonableness of that request, as is usually the case.

Plaintiff also seeks punitive damages, which may be considered in determining the amount in controversy in a civil action. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). In California, a plaintiff may recover punitive damages for a breach of the implied covenant claim if he can prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Putting aside that the FAC does not include allegations from which the Court draws the reasonable inference that Plaintiffs have engaged in oppression,

6

fraud, or malice—rather than a standard denial of an insurance claim due to a contractual exclusion—Plaintiff has not identified the amount of punitive damages she seeks that would permit the Court to assess the reasonableness and probability of such an award.  However, the question is whether attorneys' fees and a punitive damages award could make up the nearly $25,000 gap between the value of the car and civil penalties and the $75,000 threshold amount in controversy.  While Plaintiff may not be able to survive a motion to dismiss on these grounds, the Court concludes that the attorneys' fees and potential punitive damages award is sufficient to allege the amount in controversy for the purposes of proceeding to service under Section 1915.  The Court's conclusion at this early stage of litigation is without prejudice to Defendants challenging the amount in controversy in a motion pursuant to Rule 12 if this case proceeds to service.

## II.     Diversity of Citizenship

The diversity statute provides, in relevant part, for jurisdiction over actions between citizens of different states.  28 U.S.C. § 1332(a).  "A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case unless the defect can be corrected by amendment." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S 77 (2010); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." ).  The Court dismissed the initial complaint because, "rather than 'affirmatively and distinctly' alleging that Infinity, AWS, and Lithia are citizens of states other than California, Plaintiff merely describes them as businesses of 'unknown legal origin and form[,]'" which is not enough.  *Moss*, 2015 WL 5360294, at *3 (citations omitted). (Dkt. No. 1 ¶¶ 2-5.)  These allegations persist in the FAC: Plaintiff still alleges that all three entities are of "unknown legal origin and form[.]"  (Dkt. No. 9 ¶¶ 2-4.)  The Court will address the citizenship allegations for each party.

7

Two of the parties here are individuals, while the others are entity defendants. For purposes of diversity jurisdiction, a person is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (1986). "[A] person is 'domiciled' in a location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely." *Id.* at 749-50 (citations omitted); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). The determination of an individual's domicile involves a number of factors including "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, . . . driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 749.

With respect to Plaintiff's citizenship, the FAC alleges that Plaintiff resides in Sonoma County, California and the sales contract reflects a residential address there. (Dkt. No. 9 ¶ 1; Dkt. No. 9-1 at 2.) Elsewhere, however, Plaintiff alleges that she is both citizen and resident of the State of Washington. (Dkt. No. 9 ¶ 7.) Similarly, Defendant Toth is alleged in the same paragraph to be a resident of Oregon and a resident of California. (*Id.* ¶ 5.) Toth is also alleged to be an employee of Lithia in Sonoma County, California. (*See id.* ¶¶ 4-5.) While citizenship and residence are different, these inconsistent allegations make the Court question the citizenship allegations of these individuals.

The citizenship allegations for the other defendants fare no better. Nonnatural persons— *i.e.*, entities—have different rules. Corporate citizenship is governed by 28 U.S.C. § 1332(c)(1), which provides that a corporation is a citizen of both its state of incorporation and the state in which its principal place of business is located. In contrast, partnerships and LLCs are citizens of every state of which its owners/members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In determining the citizenship of parties, "much more than unsubstantiated, conclusory allegations" are required. *See Kirby Morgan, Inc. v. Hydrospace, Ltd.*, No. CV 08-6531 PSG (FFMx), 2009 WL 32588, at *3 (C.D. Cal. Jan. 2, 2009). On the one hand, the FAC alleges that Infinity is of unknown legal origin and form, but on the other it alleges that Infinity is a corporation and that it is a citizen of Alabama. (Dkt. No. 9 ¶¶ 2, 8.) Similarly,

the FAC alleges that AWS is of unknown legal origin and form, but also alleges that it is a corporation and citizen and resident of Illinois. (*Id.* ¶¶ 3, 9.) There are no facts alleged pertaining to the state of incorporation or principal place of business of Infinity or AWS. Conclusory allegations of corporate citizenship are not enough; Plaintiff must allege facts that permit the Court to assess the corporation's state of incorporation and principal place of business. *See, e.g.*, *Fairway Physicians Ins. Co. v. The Medical Protective Co.*, No. CV 10-6651 PA (RCx), 2010 WL 3990477, at *2 (C.D. Cal. Oct. 12, 2010) (rejecting the conclusory allegation that a corporate defendant was a citizen of a particular state without allegations regarding state of incorporation and principal place of business). Plaintiff has not done so. Similarly, Plaintiff still has not identified the form of Lithia, and instead alleges only that it does business in and is a citizen and resident of California. (*Id.* ¶¶ 4, 10.) If it is a corporation, as above, Plaintiff must affirmatively allege the state of incorporation and principal place of business. If not, Plaintiff must allege the citizenship of Lithia's members in order to establish citizenship. Having failed to do either, Plaintiff's allegations are inadequate to establish diversity jurisdiction. *See, e.g.*, *Diamos v. Specialized Loan Servicing* LLC, No. 13-cv-04997 NC, 2014 WL 3362259, at *2 (N.D. Cal. July 7, 2014) (rejecting the conclusory allegation that an LLC-defendant is a citizen of a particular state without allegations of the citizenship of the entity's members); *Fairway Physicians Ins. Co.*, 2010 WL 3990477, at *2.

    If "the information necessary to establish the diversity of the citizenship of [Defendants] is not reasonably available to [Plaintiff]," then she may plead the citizenship of Defendants upon information and belief. *See Caroline Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014). Plaintiff has not alleged facts from which the Court can assess the citizenship of the entity defendants, nor that this information is not reasonably available to her, so she has failed to properly allege diversity jurisdiction. In short, the conflicting allegations about the residency of Plaintiff and Toth lead the Court to question the citizenship allegations for those individual parties, and the FAC does not include sufficient allegations to establish the citizenship of the entity defendants. Plaintiff has therefore failed to meet her burden of establishing diversity jurisdiction.

**CONCLUSION**

For the reasons described above, the FAC still fails to establish a basis for subject matter jurisdiction and therefore must be dismissed pursuant to Section 1915(e). If Plaintiff can correct this pleading defect, she may file a Second Amended Complaint ("SAC") no later than October 30, 2015.

**IT IS SO ORDERED.**

Dated: October 15, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge